THE STATE, ON THE RELATION OF THE DISTRICT ATTORNEY, *v.*
W. S. LOVELL.

1. VACANCY IN OFFICE. *Justice of the peace.   Constitution* 1890, ? 103.

   The mode òf ·filling vacancies in the office of justice of the peace is, by
   ? 103, constitution 1890, committed entirely to the legislature.

2. SAME. *Legislative authority.   Code* 1892, ?? 3683, 3686.·

   The office of justice of the peace is a "county *district* office" under ? 3683,
   code 1892.   It is not embraced in ? 3686, which authorizes the governor
   to fill, by appointment, any vacancy in a "county office."   Therefore,
   he is not.authorized by it to fill, by appointment, a vacancy in the office
   of justice of the peace, though the board of supervisors has failed for
   more than forty days to provide for filling such vacancy by ĕlection.

3. SAME. *Case of emergency.   Constitution* 1890, ? 103.

   But in such case, the local authorities not having filled the vacąncy
   within the time required by law, and the legislature having failed to
   provide for filling such a vacancy otherwise, a case of emergency arises,
   authorizing the governor to fill it by provisional appointment, under
   ? 103 of the constitution.

4. PROVISIONAL APPOINTMENT. *Vacancy regularly filled.   Code* 1892, ? 3683.

   In such case, where the unexpired term exceeds two years, the appoint-
   ment, being provisional, should not be for the unexpired term, but only
   "until the vacancy is regularly filled;" and it should be filled by
   special election, as required by ? 3683, code 1892.

5. APPOINTMENT PENDING CONTROVERSY. *Validity.   Vacancy.*

   Where, to fill a vacancy, an election is held which is irregular, but a com-
   mission is issued to the successful candidate, who qualifies and enters
   upon the duties'of the office, and afterwards litigation arises involving
   the validity of the election, whereupon such person, anticipating an
   adverse' decision, is appointed by the governor as if there had been no
   election, the fact that this is done pending the controversy does not
   affect the validity of his appointment.

6. SAME. *Duty of executive.   Validity of acts.   Review by courts.*

   Such appointment, pending the controversy, is not an invasion by the ex-
   ecutive .of the judicial department.   Charged with the duty of execut-
   ing the laws and making appointments in proper cases, the governor

must decide for himself whether a vacancy exists in a given case, his acts being subject to review by the courts. If he assumes to appoint when there is no vacancy, or when the power to appoint does not exist, it will confer no right.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

Information in the nature of a *quo warranto* by the state, on the relation of the district attorney of the ninth district of Mississippi, against appellee, W. S. Lovell. The information alleges that at the general election held in November, 1891, one Convillion was elected justice of the peace for the third district of Warren county for a term of four years, commencing the first Tuesday after the first Monday of January, 1892; that he failed to qualify, and that no action was taken to fill the vacancy until the 6th day of May, 1892, when the board of supervisors declared a vacancy to exist, and ordered an election to fill it, but failed to name the day upon which the election was to be held; that the election commissioners of the county, erroneously believing that they had the power to name the day, fixed the election for May 25th, 1892, on which day an election was held, when appellee, W. S. Lovell, was by them declared elected, but, before a certificate of election was issued, the commissioners were enjoined from issuing it; that the returns of said election were, however, forwarded to the secretary of state, and that the governor, through mistake of law, caused a commission to issue to said Lovell, who, thereupon, qualified as justice of the peace; that, thereupon, the proceedings in this case were instituted against said Lovell before the circuit judge in vacation, July 1st, 1892. The information further shows that while said *quo warranto* proceedings were pending, the governor, without waiting for a decision by the court as to the validity of said election, through error of law, appointed the said Lovell justice of the peace for the whole term ending January, 1896, and issued a commission accordingly. This appointment the relator alleges was without authority, wherefore it was prayed that

the defendant should be debarred of exercising the functions of said office.

A demurrer to the information was sustained, and the case dismissed. Relator appeals.

*Pat. Henry* and *J. M. Gibson*, for appellant.

The governor had no power to appoint appellee, there being no vacancy caused by removal from office.

The board of supervisors having ordered an election to fill the vacancy of the unexpired term, the governor could not interfere and fill the office by appointment, except for a temporary officer. The form of an election having been gone through with, and a commission having issued to Lovell, the governor had no power to declare this *de facto* officer an usurper in advance of a decision by the courts. He could not have issued a valid commission to an appointee for the unexpired term, it being more than two years.

The words "remove and appoint," in § 139 of the constitution, must be taken together, and the governor can only appoint in such cases when he has removed the officer.

The authority of the governor, under § 103 of the constitution, is limited to making a *temporary* appointment, the officer to hold until an election. He cannot appoint officers made elective by the constitution, except to fill a temporary vacancy pending an election, unless it be in a case where he has removed an officer.

Section 3686, code 1892, is unconstitutional, being framed upon a too liberal construction of § 139 of the constitution. But, if it is not unconstitutional, the governor could not issue a commission in this instance, because there was no vacancy existing at the time. There had been the form of an election, and the commission had issued, and Lovell had qualified, and was performing the duties of the office. It was then for a court of competent jurisdiction to decide whether or not the office was vacant. The constitution wisely divorces the judicial functions from those of the ex-

ecutive. So long as there was an officer, or a person acting as such, there was no vacancy, and the governor had no power to declare one. *Brady* v. *West*, 50 Miss., 68; 9 Paige Ch. (N. Y.), 507; 20 Cal., 503; 37 *Ib.*, 614; 49 *Ib.*, 407; 2 Md., 341.

If the view of the law as held by the circuit court be correct, the governor can take a case out of the hands of the court, and decide the legality of an election. A corrupt governor could install himself, and, with the power to name the officers of election and to decide what elections are legal, he would be furnished with a machine to perpetuate infamy. From the present executive there is nothing to fear, but it would be dangerous to hold that the governor has such a power.

The last commission was void, and should be so declared. On this point, see Cooley on Const. Lim., 779.

The people, by acquiescence, could have waived the irregularity, and would be held to have waived it in the absence of the proceeding instituted by the state. *State* v. *Ruff*, 29 Pac. R., 999.

*Miller, Smith & Hirsh*, for appellee.

1. The order providing for a special election, at which appellee was elected, was a nullity, because it failed to fix a day for the election. The office remained vacant in spite of the fact that Lovell had entered therein, and, but for § 3686, code 1892, it would have been the duty of the board of supervisors to order an election to fill it.

There was occasion for the judicial declaration of a vacancy. The illegal election left the vacancy as before.

The error of opposite counsel is in supposing that the *de facto* principle, which applies only in favor of third persons, may preclude a vacancy in an office.

It is a pure fancy that, in superseding a former void commission, the executive invaded the judicial department. Had

a person other than Lovell been appointed, the second commission would have given the holder a right to the office.

The state did not acquiesce in a *de facto* claim innocently set up by Lovell, but instituted proceedings to oust him. There was nothing to prevent him from anticipating a judgment and surrendering his void claim, which he did by qualifying under the second commission.

There is no force in the suggestion that the governor could usurp the functions of the court should he assume to fill the vacancy when none existed. His action would be annulled, and would prejudice no one.

2. Section 3686, code 1892, is fully authorized by § 103 of the constitution. There is nothing in the constitution requiring that vacancies, in cases like this, shall be filled by a special election. The mode of filling the vacancy is committed to the legislature, which may provide for election or appointment to fill vacancies. In cases of emergency, the constitution gives the governor power to make provisional appointments, and, in cases of special election, provides for the appointee to hold until his successor is qualified, after a general election.

If the appointment in this case should only have been temporary, to last until an election, still the court could not have ousted defendant before such election. The judgment appealed from is right, whether we rely upon § 103 of the constitution or upon § 3686, code 1892.

CAMPBELL, C. J., delivered the opinion of the court.

By § 171 of the constitution of 1890, justices of the peace are to be chosen in each county, in the manner provided by law, for each district. " Chosen " is used in the sense of *selected*, as shown by § 138, also §§ 135, 168. The constitution does not provide for the election of county officers, including justices of the peace, by the qualified electors. They are to be chosen or selected as provided by law, and the legislature might, in pursuance of the constitution, pro-

vide for the selection of any of these officers by the governor, the circuit judge, the chancellor or in any other way provided by law. The mode of filling all vacancies in all offices not specifically provided for by the constitution (and those provided for by the constitution itself are few, and do not include justice of the peace or any county office), is left, by express provision, to the legislature (§ 103 of the constitution), which thus has the amplest power, both as to the selection of these officers and filling vacancies in these offices. In the exercise of this power, the legislature has provided for the election by qualified electors in districts, of justices of the peace, and it has also provided for filling vacancies in any county or county district office (code 1892, § 3683), with the further provision for the governor to fill the vacancy by appointment, if forty days have been permitted to elapse without the action of the proper local authority having filled the vacancy. The authority of the legislature to so provide is indisputable, as already shown. All talk of the liberties of the people as to this is idle, for, by the constitution, the whole matter is committed to the legislature as to the selection and removal of county officers, and filling vacancies.

The validity of § 3683 of the code is unquestionable, but serious doubt arises as to whether justices of the peace, chosen for districts in a county, are county officers, in view of the fact that in § 3683 a distinction is made between a county office and a "county *district* office," and in § 3686 there is no mention of a "county district office." A district may be a portion of a county. It is spoken of as such by the constitution in § 170, which provides for dividing each county "into five districts," and for the selection of a supervisor in each district, to constitute the board of supervisors of the county. Then immediately follows § 171, which provides for justices of the peace "for each district," meaning, probably, the districts provided for by § 170. It is inconceivable that the legislative purpose was to omit supervisors and justices of the peace and constables from the list of offices,

vacancies in which should be filled by the governor, as provided by § 3686, for there is as much propriety, and perhaps as much necessity, for having these offices filled as many of those provided for in terms. It is not supposable that the legislature intended to secure the avoidance of vacancies in city, town, and village offices, and in comparatively useless county offices, and intentionally failed to provide for filling district offices in a county in case of neglect by the local authorities to fill them promptly. It must have resulted from inadvertence, as was the failure to provide for the filling of vacancies in state offices. § 3681. District offices in counties are certainly not named in § 3686.

The question arises, is this an omission which cannot be supplied by the court, or are district officers, of the kind spoken of, county officers, and included in the terms employed in § 3686 of the code of 1892? Upon the answer to this question depends the power of the governor to appoint; for while § 103 of the constitution gives power to the governor to appoint, in cases of emergency, to fill vacancies, and this is ample authority for him to act where the legislature has not provided for the case in pursuance of the same section, where the legislature has executed that power, and determined the mode of filling vacancies, the law must govern. In the exercise of the power given by § 103, the legislature enacted § 3683 of the code, and provided for filling vacancies in county and "county district" offices, where the term unexpired has more than two years to run, by election held by order of the board of supervisors. This section is qualified by § 3686, which provides for appointment, by the governor, to fill vacancies in certain offices in a certain contingency. Any office embraced by § 3683, and not embraced by § 3686, must be filled, as provided by the former, unaffected by the latter.

Justices of the peace are not county officers. They are chosen in and for districts, separate portions of counties, and have no county functions to perform. They are what § 3683

denominates "county district" officers. If the code had not clearly drawn the distinction, it would perhaps have been allowable to interpret § 3686 as including justices of the peace in the expression "*county*" *office*, but as § 3683 makes the distinction plainly, and § 3686 enumerates the offices to be filled by the governor in a certain contingency, and omits "county district" offices in this enumeration, we are bound, in deference to the rule that the enumeration of certain things excludes all not mentioned, to hold that the omitted offices are not included in § 3686. The language of § 3683 is that certain offices, including by name "county district office," shall, when vacant, be filled by election, if the unexpired term exceeds two years, and § 3686 says a vacancy in a county office not promptly filled as provided by § 3683, shall be filled by the governor. Section 3686 confers authority to appoint only as to the offices it mentions. It qualifies § 3683 only to the extent it expresses. It excludes "county district" offices, which that of justice of the peace is, and, as to this office, § 3683 must govern, and, by it, no appointment can lawfully be made by the governor to fill a vacancy in the office of justice of the peace.

The foregoing view is strengthened by considering the history of legislation on this subject. The code of 1880 specifically provided for filling a vacancy in the office of justice of the peace by election ordered by the board of supervisors or the president thereof (§ 2187), and it also provided for filling a vacancy in the office of constable. § 388. It then provided, by § 156, for filling a vacancy in any county office. Vacancies in the board of supervisors were directed to be filled by election, " as other county elections to fill vacancies." § 2131. The code of 1892, by § 3683, provides for vacancies in both county and "county district" offices; that is, all county offices, including, probably, boards of supervisors and justices of the peace and constables, who are "county district" officers in the nomenclature of the code. This is plainly the case, since no specific provision other

than that in § 3683 is made by it for filling vacancies in the offices of justices of the peace and constables. Section 3683 was intended for all, and includes all county and "county district offices." But, in enumerating offices to be filled by the governor, as provided by § 3686, it does not include all mentioned in § 3683, and excludes "county district" offices. It has no other provisions on the subject, except the two sections—3683 and 3686—which were adopted as a substitute for §§ 156, 388, 2131, 2187 of the code of 1880. By it provision is made for filling, by election, all county and "county district" offices, and for appointment by the governor to fill "county, city, town, or village offices;" but none is made for thus filling "county district" offices.

But while these views are, as we think, unanswerable, it is equally true that the constitution, by § 103, confers power on the governor, in cases of emergency, to make provisional appointments to fill all vacancies not provided for otherwise by the constitution or law; and as the vacancy in the office which is the subject of this contest was not filled in the mode provided by § 3683—within forty days, the time specified by § 3686, as that the lapse of which without filling vacancies, in county and municipal offices, creates an emergency in which the governor should act—a case existed for appointment by the governor. It was the duty of the board of supervisors to take steps promptly to fill the vacancy. It did not; and while, because of the omission in § 3686 commented on, the governor is not by it empowered to appoint in such case, because of such omission, he is authorized by the constitution to appoint. Where a statute, passed in pursuance of the constitution, covers the case, it must govern. In the absence of such statute, the constitution confers needed authority.

The fact that Lowell, who had gone into the office in pursuance of an election, said to be void, was appointed and commissioned instead of another, or that he was thus commissioned pending a contest as to his right to the office by virtue

of the election, makes no difference as to the validity of his appointment. That is the only question. If the election was void, all had a right to anticipate its being so held, and to act on that assumption.

But, while § 103 of the constitution authorized an appointment by the governor, in the state of case presented, it did not authorize a commission for the unexpired term, but only "until the vacancy is regularly filled." It may, and should, be filled as prescribed by § 3683 of the code— that is, by election ordered as therein provided for; and the commission of the governor authorizes the holding of the office until a person thus elected shall be duly qualified. This results necessarily from the fact that the governor's power to appoint in this case rests alone upon § 103 of the constitution, and it authorizes only *"provisional appointments"*—*i. e.*, such as will meet the present needs in an emergency, and "to continue until the vacancy is regularly filled." That means not filled at a regular election, but in accordance with law; and, where the law provides for a special election, that is the mode of filling regularly contemplated by the constitution. If no provision is made for filling vacancies by special election, the appointee of the governor would hold, necessarily, until the vacancy should be filled at the next regular election, because, in no other way could it be regularly filled. But where the law has provided for special elections to fill vacancies, they should be filled in that way, and a provisional appointment will expire accordingly.

It is a mistake to regard the action of the governor in making an appointment pending the controversy in court, and appointing the defendant, as an invasion by the executive of the functions and province of the judiciary. Charged with the duty to see that the laws are faithfully executed, and with the duty of making appointments to fill vacancies in certain cases, the governor must necessarily decide for himself, in a given condition of things, whether or not a

vacancy exists which he should fill, and act according to his conclusion. This is but to discharge his duty. The validity of the appointment he makes, in any case, is a question for the courts, which, in our system, pass on the validity of legislative and executive acts, wherever they are involved in any controversy before the courts. Were an appointment made when no vacancy existed, or when the power to appoint did not exist, it would confer no legal rights on the appointee, as would be declared when brought to judgment before that branch of our government charged with the function and duty of finally deciding all questions arising under the constitution and laws of the state where the rights of litigants are involved. The legislature enacts, the executive executes, and the judicial department decides and adjudges, and it is then for the executive to uphold and execute the mandate of the judiciary, for that is the final expression of the will of the sovereign—the people—whose deputies the judges are, speaking their voice in deciding controversies.

Those engaged as the representatives of the people, in the three distinct departments into which, by the constitution, the powers of government are divided, must deal with whatever arises, and act according to their best judgment in every matter, and none can be charged with overstepping the line of duty who deals with a contingency presented for his action as appears to him to be right. He may err in judgment, and be wrong in his action, but he is not blamable for acting as he thinks right when called on to act. He would be blamable if he failed to act when called on. The best contrivance of human invention is to vest power to decide finally all questions arising under the constitution and laws in the judicial department, with which dispute must end until the sovereign shall, by direct intervention, change the decision made. Hence, the existence of a court of appeals for the correction of errors of inferior tribunals, based on the assumption that it, with increased opportunity for investigation, deliberation, and consideration, will correctly deter-

mine and express the will of the people, the source of all power in government. Even it might possibly err, but it is necessary to lodge power to decide finally somewhere, and it has been vested in this court by our constitution, and its utterances must be accepted as the voice of the commonwealth, binding on all. With a king or queen, to whom no wrong can be imputed, and an omnipotent legislature, the judicial department is not altogether so important as with us. In our system of constitutional government, whose powers are distributed among three distinct departments, each is essential to the complete whole, like the different members of the human body, but with distinct and appropriate functions for each, and neither should shrink from or falter in the performance of the duty before it.

In this case the chief executive performed his duty in dealing with a vacancy in office, and this was not an invasion of the judicial department, which then was called on, in the pending suit, to pass judgment on the validity of the executive appointment, and thus the beauty of our system is exhibited and its harmonious operation illustrated.

*Affirmed.*